[No. 20635. Department One. September 1, 1927.]

THE STATE OF WASHINGTON, *on the Relation of Leonard J. Woodruff et al., Plaintiffs,* v. THE SUPERIOR COURT FOR CHELAN COUNTY *et al., Respondents.*[1]

[1] EMINENT DOMAIN (25)—PUBLIC USE—PRODUCTION AND SUPPLY OF ELECTRIC POWER. The appropriation of water by a public service corporation to generate electric power to be sold to the public generally for manufacturing, domestic, and professional purposes, is a public use, notwithstanding the relator's only customer is a power company holding all the stock of the relator, handling the enterprise in the name of the relator, where such power company is engaged in serving the public generally for the purposes stated.

[2] SAME (25). Such condemnation cannot be contested on the ground that the power generated is to be sold and used in a sister state, where the court, upon conflicting evidence, has found that none of the power is to be used outside of this state.

[3] SAME (119)—PLEADING—DESCRIPTION—SUFFICIENCY. A description of the property to be taken in condemnation proceedings is sufficient to give the court jurisdiction, where it was sufficient to give notice to the owners of the property affected.

[4] PLEADING (8, 134) — CERTAINTY — BILL OF PARTICULARS. Error cannot be assigned on denying motions to make a petition more definite and certain where at the same time appellant's motion

[1] Reported in 259 Pac. 379.

5—145 WASH.

for a bill of particulars was granted and complied with, giving the details asked for.

[5] EMINENT DOMAIN (106)—DEFENSES AND OBJECTIONS. The objection by land owners to a condemnation in that it does not embrace an included county road is not available where the county's rights are in issue in another case, and the county is proceeding to vacate the road in question.

[6] TRIAL (2)—TRIAL OF CAUSES TOGETHER. It is discretionary to consolidate for trial cases for the condemnation of water by a public service corporation to generate power for public use.

[7] EMINENT DOMAIN (106, 110)—DEFENSES AND OBJECTIONS—NECESSARY PARTIES DEFENDANT. Objections to condemnation proceedings joining a non-resident and a county, are not tenable where the county was a necessary party under Rem. Comp. Stat., § 921, by reason of the county's outstanding lien for unpaid general taxes.

[8] REMOVAL OF CAUSES (6)—TRANSFER AND EFFECT—FAILURE TO APPEAL. Objection to a joinder of parties, depriving defendant of the right to remove the cause to the Federal court, cannot be made where the cause was so removed and remanded back by the Federal court, and no appeal was taken therefrom.

[9] CONSTITUTIONAL LAW (137)—DUE PROCESS OF LAW—NOTICE TO NON-RESIDENT OWNER. Rem. Comp. Stat., § 922, requiring notice in condemnation proceedings by publication once a week for two weeks as to non-residents whose residence is unknown, stating the time and place where the same will be presented, satisfies the constitutional requirements of due process of law, where there were three weekly publications, with eighteen days between the first publication and the day of hearing, and defendant made a special appearance and motion to quash, three days before the presentation of the matter, the trial being had some months later.

Certiorari to review an order of the superior court for Chelan county, Parr, J., entered April 25, 1927, upon findings in favor of the relator, adjudging a public use and necessity in condemnation proceeding, after a trial to the court. Affirmed.

*Adrien W. Vollmer, A. N. Corbin, Paul P. Ashley, J. L. Baldwin, Shorts & Denney, O. P. Barrows* and *Wm. A. Grimshaw,* for relators.

*Post & Russell, Charles S. Albert,* and *Edwin C. Matthias,* for respondents.

MITCHELL, J.—The Chelan Electric Company, a public service corporation, commenced a number of actions in the superior court of Chelan county to obtain the right to overflow the lands of various owners to an elevation of eleven hundred feet above mean sea level, for the purpose of creating a reservoir in Lake Chelan for the storage of water to be used in the manufacture of electric energy for public use. By order of the trial court, sixteen cases were consolidated for the purpose of the hearing on the question of public use and necessity, but provided in the order for a separate trial of each case upon the question of damages. Upon the hearing, the court made and entered findings of fact, conclusions of law and an order of public use and necessity in the consolidated cases. Certain of the property owners, namely, Leonard J. Woodruff and wife, James P. Flick and wife, Alice Barbee Wick, Schuyler J. Gray and wife in two cases, Richard H. Lord, and Edith Merritt, have jointly obtained a writ of certiorari to review the order of the superior court. The cases relate to the enterprise that was involved in *State ex rel. Chelan Electric Co. v. Superior Court,* 142 Wash. 270, 253 Pac. 115, which case is commonly spoken of as the Getty case.

By their several and separate briefs and arguments, the relators here have presented assignments, some of which are common to all of the relators, others not so. They will be discussed and considered as common to all, unless specified as applying to an individual case.

[1] It is claimed that the use contemplated in this case is not a public one, because the Chelan Electric Company has no transmission line nor any customer, except the Washington Water Power Company which owns practically all of the stock of the Chelan Electric Company. That situation was explained in the Getty case. The Washington Water Power Company is a

public service corporation of this state and is handling
the enterprise in the name of the other corporation
which was organized for similar public purposes.  So
far as this point is concerned, there is no question
about the public use to which the property will be put.

[2]   Further, it is said that the use is a private one
and that there is no right or power of eminent domain,
because the electric energy produced at the Lake
Chelan plant will be used in Idaho.  The same contention
was made in the Getty case, wherein we did not find it
necessary to decide whether that, if true, would defeat
the right of eminent domain, because of a finding in
that case to the effect that such electric energy would
not be used in the state of Idaho, and said in that case
that the record, as we understood it, did not lead to a
different view from that of the trial court.  Admitting
the record and conclusion in that case, relators now
say that the proof is different in the present case, that
they have now furnished additional evidence in sup-
port of their claim.  But, so has the condemner intro-
duced evidence additional to that it relied on in the
other case, and upon all of it, conflicting as it is, the
trial court has again found that none of the energy so
produced will flow into Idaho.  And again we must say,
as in the Getty case, "an examination of the record
does not lead to a different conclusion."  The question
involved is one of fact and in reaching our conclusion,
as we examine and study the testimony, we bear in
mind, of course, the opinion of the trial judge, who had
the advantage of observing the appearance of the wit-
nesses and their manner of testifying.  This, accord-
ing to our general rule.

[3]   It is assigned that the property in each case is
not described with reasonable certainty and that, there-
fore, the trial court obtained no jurisdiction.  The
descriptions are long and need not be set out in this

opinion. An examination of them, however, satisfies us that they are sufficient to satisfy all question of jurisdiction, as the same affects the rights of resident owners upon whom personal service was had, or the rights of any nonresident owner upon whom service was had by publication of notice. In substance, the descriptions are like the one held to be sufficient in the Getty case.

[4] In this connection, it is further claimed that the court erred in denying motions to make the petitions more definite and certain. It appears, however, that, with such motions, the relators filed motions for bills of particulars for the same purpose and that the order denying the first motions granted the second ones, which have been complied with by the petitioner by the giving of minute detailed descriptions by metes and bounds in each and all of the cases of the lands to be flooded.

[5] At least some of the lands to be flooded are traversed at the present time by a county road. The technical objection is made that no mention was made, or description of the county road given, in the descriptions furnished of relators' properties, and, as we understand some of the arguments, that the rights of the public in the county road cannot be condemned or taken away. The county, which has supervision and control over its highways, is a party to these suits and, whether or not the highway was described in the petition in the present cases, it does clearly appear that, in another case, the petitioner is proceeding against the county to acquire its interest in the highway and that, for that purpose and upon due and regular statutory proceedings, the county agreeably is proceeding to vacate the present highway and establish another one to take its place.

[6] . It is assigned that the court erred in consolidating these cases for one hearing. That matter was within the discretion of the court. The order to that effect saved to each of the relators the right to a separate trial on the question of damages.

[7, 8]    The relator Alice Barbee Wick is, and was, a resident of Philadelphia, Pennsylvania, and error is assigned on her behalf to the effect that the county of Chelan was improperly made a joint defendant with her, having the effect, it is claimed, of depriving her of the right to a removal of her case to the Federal court on account of diverse citizenship. Two answers may be made: First, at the time the action was commenced general taxes due the county were outstanding and a lien upon the property, and Rem. Comp. Stat., § 921 [P. C. § 7646], requires a petition in eminent domain cases to set forth the name of each and every owner, encumbrancer or other person or party interested in the property, and Rem. Comp. Stat., § 922 [P. C. § 7647], requires that a notice of such petition be served on each and every such person; and second, the record shows that, prior to the hearing herein by the trial court, relator Wick did remove the case against her to the Federal court and, upon a hearing therein, that court promptly remanded the cause to the state court, from which order of the Federal court it appears no appeal was prosecuted nor review sought or had.

[9]    Another assignment of error on behalf of Miss Wick is that due process of law is not afforded non-resident land owners by § 2, Laws of 1890, p. 295; Rem. Comp. Stat., § 922. That section provides:

. "A notice, stating briefly the objects of the petition, and containing a description of the land, real estate, premises or property sought to be appropriated, and *stating the time* and place when and where the same will be presented to the court, or the judge thereof,

shall be served . . . In all cases where the owner or person claiming an interest in such real or other property, is a nonresident of this state, or where the residence of such owner or person is unknown, and an affidavit of the agent or attorney of the corporation shall be filed that such owner or person is a nonresident of this state, or that after diligent inquiry, his residence is unknown, or cannot be ascertained by such deponent, service may be made by publication thereof in any newspaper published in the county where such lands are situated, once a week for two successive weeks; . . . "

The return day, or the day fixed for the hearing in this case, was October 11, 1926. The notice of the hearing, which was filed on September 22, 1926, so stated. It was published September 23, September 30 and October 7, 1926, three weekly publications with eighteen days between the date of the first publication and the return day. On October 8, 1926, three days before the return day, Miss Wick by her attorney, who was also a resident of Philadelphia, Pennsylvania, by special appearance (which has been preserved) filed a motion to quash the notice and service. Other than the matter of the description of the property, hereinbefore discussed, the argument is that the two weeks' publication of notice provided for by statute is unreasonably short to constitute due process of law. A great number of authorities are cited by each side upon this important point. They have been examined, but we do not find it necessary or practical to cite or discuss all of them.

Counsel for the relator has called attention to authorities deciding the number of publications and intervening time necessary to satisfy a statute requiring publication for a given number of successive weeks. But that is not the question here where, under the statute requiring publication once a week for two

successive weeks, the fact is that notice was so published for three successive weeks. The real question here is that of reasonable notice to a nonresident and opportunity to be heard. The case nearest in point cited, quoted from and apparently relied on by this relator, is *Roller v. Holly,* 176 U. S. 398, 44 Law Ed. 520. In that case, it was held that a nonresident defendant who was called upon to answer a suit pending in Texas, while he himself was in Virginia, within five days of date of service of citation, was not furnished due process of law. That is, the time under the circumstances was unreasonably short. But we may, and of course do, agree with that case and still it does not lead to the striking down of our statute that is complained of, nor to a holding that the notice in the present case was unreasonably short. Counsel argues, as we understand, that, because our statute speaks of two weekly publications, it means eight days' notice and that that length of time, under the circumstances in this case, does not furnish due process of law under the doctrine of the *Roller* case. That case speaks of the date of *service* with relation to the *return day.* Our statute says nothing whatever about a *return* day, but only the number of publications of the notice, where publication must be had. The return day not being regulated by statute, as was the case in *Roller v. Holly, supra,* it is fixed independently of it, so that the question in this case is, was the eighteen days' notice that was actually given, that is, the time that elapsed from the date of the first publication of the notice and the return day, unreasonably short under the provision of the constitution?

The statute provides for publication in a newspaper in the county where the lands are situated. With reference to the validity and the necessity for indirect

notice of proceedings *in rem,* as applied to lands in proceedings seeking to subject them to public necessity, there is a sensible and practical theory, supported by authority, that the test is whether the publication of notice was such as to create a reasonable presumption that, if the owner is present and taking care of his property, he would receive notice of what is going on and have an opportunity to defend. *Ballard v. Hunter,* 204 U. S. 241, 51 Law Ed. 461; *Bellingham Bay Improvement Co. v. City of New Whatcom,* 172 U. S. 314, 43 Law Ed. 460; *Huling v. Kaw Valley R. & Imp. Co.,* 130 U. S. 559; *Windsor v. McVeigh,* 93 U. S. 274, 23 Law Ed. 914; *Great Northern R. Co. v. City of Minneapolis,* 136 Minn. 1, 161 N. W. 231.

As stated by counsel for the respondent, notwithstanding the contention of relator that eighteen days was not enough time, it happened that the relator did employ a lawyer residing in Philadelphia to come out and put in an appearance for her, doing so three days before the return day, and then, by the liberal if not slow process, supervised and controlled by the trial court, had more than five months to prepare her defense before the hearing actually took place. As said in 2 Lewis Eminent Domain (3rd ed.), § 568, p. 1102, in respect to the manner or time of posting or publishing notice in order to satisfy the requirements of the constitution, "no definite rule is laid down by the authorities." In our opinion, the statute in question is a valid one, and the notice in this case did provide and give reasonable time and opportunity to be heard.

Affirmed.

MACKINTOSH, C. J., MAIN, FRENCH, and FULLERTON, JJ., concur.