## RUDDOCK et al. v. BLOEDEL DONOVAN LUMBER MILLS. *

Circuit Court of Appeals, Ninth Circuit.
October 22, 1928.

No. 5544.

*Rehearing denied November 30, 1928.

Joseph McCarthy, of Spokane, Wash., and Raymond D. Ogden, of Seattle, Wash., for appellants.

E. S. McCord, Sr., Millard P. Thomas, and Kerr, McCord & Ivey, all of Seattle, Wash., for appellee.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. The laws of the state of Washington provide that any owner of land which is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity, or to construct and maintain any drain, flume, or ditch, on, across, over, or through the land of such other, for agricultural, domestic, or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such drain, flume, or ditch, as the case may be, and that the term "private way of necessity," as used in the act, shall mean and include a right of way on, across, over, or through the land of another, for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways, and other structures upon, over, and through which timber, stone, minerals, or other valuable materials and products may be transported and carried. The act further provides that the procedure for the condemnation of lands for a private way of necessity, or for drains, flumes, or ditches, shall be the same as that provided for the condemnation of private property by railroad companies; that any person or corporation availing themselves of the provisions of the act for the purpose of acquiring a right of way for a logging road, as a condition precedent, contract and agree to carry and convey over such roads to either termini thereof any of the timber or other produce of the lands through which such right is acquired at any and all times, so long as said road is maintained and operated at reasonable prices, that a failure so to do shall terminate such right of way, and that the reasonableness of the rate shall be subject to determination by the public service commission. Laws 1913, p. 412.

The Bloedel Donovan Lumber Mills, a corporation, owning several thousand acres of timber land in Clallam county, in that state, filed its petition in the superior court of the county for the condemnation of a right of way over certain lands owned by C. H. Ruddock and others. The proceeding was removed into the District Court of the United States for the Western District of Washington on the petition of the defendants, or landowners, on the ground of a diversity of citizenship. After removal the court below entered the customary order of necessity, under the local practice, and impaneled a jury to assess the damages. The jury returned a verdict assessing damages, and a judgment or decree of appropriation was entered thereon. From that judgment or decree the present appeal is prosecuted.

The appellants earnestly insist that the Washington statute authorizes the taking of private property for a private use, and violates the Fourteenth Amendment to the Constitution of the United States. The validity of the statute has been upheld by the Supreme Court of the state in State ex rel. Mountain Timber Co. v. Superior Ct., 77 Wash. 585, 137 P. 994; State ex rel. Grays Harbor Logging Co. v. Superior Ct., 82 Wash. 503, 144 P. 722; State ex rel. Eastern Ry. & Lumber Co. v. Superior Ct., 127 Wash. 30, 219 P. 857; State ex rel. White Pine Sash Co. v. Superior Ct., 143 Wash. 687, 255 P. 1025; State ex rel. Woodruff v. Superior Ct., 145 Wash. 129, 259 P. 379; and it is perhaps needless to say that the construction thus placed on the Constitution and laws of the state by the highest court of the state is controlling on

this court. Bucher v. Cheshire R. Co., 125 U. S. 555, 8 S. Ct. 974, 31 L. Ed. 795. Not so, however, as to the federal question involved. Thus, in Grays Harbor Logging Co. v. Coats-Fordney Logging Co., 243 U. S. 251, 37 S. Ct. 295, 61 L. Ed. 702, a writ of error was sued before final judgment to review the judgment in State ex rel. Grays Harbor Logging Co. v. Superior Ct., supra, and in dismissing the writ for that reason, the court said:

"When the litigation in the state courts is brought to a conclusion, the case may be brought here upon the federal questions already raised as well as any that may be raised hereafter; for although the state courts, in the proceedings still to be taken, presumably will feel themselves bound by the decision heretofore made by the Supreme Court ([State ex rel. Grays Harbor Logging Co. v. Superior Ct.] 82 Wash. 503 [144 P. 722]) as laying down the law of the case, this court will not be thus bound."

■■■■ The briefs in this case discuss the right to condemn private property in the exercise of the power of eminent domain in nearly all its aspects, but for reasons hereinafter stated we deem it unnecessary to discuss or consider that broad question. We might say in this connection, however, that counsel for the appellee have cited no case outside the state of Washington upholding the right to take private property for a private logging road, and we have discovered none. The earlier decisions in that state are to the contrary. On the other hand, counsel for the appellants have cited cases from many of the state courts holding that private property cannot be taken for that purpose. Paine v. Savage, 126 Me. 121, 136 A. 664, 51 A. L. R. 1194; Anderson v. Smith-Powers Logging Co., 71 Or. 276, 139 P. 736, L. R. A. 1916B, 1089; Cozard v. Kanawha Hardwood Co., 139 N. C. 283, 51 S. E. 932, 1 L. R. A. (N. S.) 969, 111 Am. St. Rep. 779; Hench v. Pritt, 62 W. Va. 270, 57 S. E. 808, 125 Am. St. Rep. 966; Gauley & S. R. Co. v. Vencill, 73 W. Va. 650, 80 S. E. 1103; Boyd v. C. C. Ritter Lumber Co., 119 Va. 348, 89 S. E. 273, L. R. A. 1917A, 94. Many other state cases have been cited, holding that private property cannot be taken for kindred private purposes, and it will readily be conceded that such is the great weight of authority in this country. Some of the decisions to which we have referred are based on local constitutional provisions and some on much broader grounds. But the only question with which we are now concerned is the single one: Does the Washington statute as con-

strued by its highest court violate the Fourteenth Amendment to the Constitution, and in the consideration of that question we are, of course, controlled by the decisions of the Supreme Court of the United States.

In Clark v. Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171, the court sustained the validity of a statute of the state of Utah authorizing the condemnation by one person for his individual use of a right of way over the lands of another for the construction of an irrigation ditch. In Strickley v. Highland Boy Mining Co., 200 U. S. 527, 26 S. Ct. 301, 50 L. Ed. 581, the court sustained a statute of the same state authorizing the condemnation of a right of way for an aerial bucket line over the land of another to enable a private owner to gain access to and operate his mine. In Hairston v. Danville & Western Railway Co., 208 U. S. 598–606, 28 S. Ct. 331, 334 (52 L. Ed. 637, 13 Ann. Cas. 1008), the court said:

"But when we come to inquire what are public uses for which the right of compulsory taking may be employed, and what are private uses for which the right is forbidden we find no agreement, either in reasoning or conclusion. The one and only principle in which all courts seem to agree is that the nature of the uses, whether public or private, is ultimately a judicial question. The determination of this question by the courts has been influenced in the different states by considerations touching the resources, the capacity of the soil, the relative importance of industries to the general public welfare, and the long-established methods and habits of the people. In all these respects conditions vary so much in the states and territories of the Union that different results might well be expected. * * * The propriety of keeping in view by this court, while enforcing the Fourteenth Amendment, the diversity of local conditions and of regarding with great respect the judgments of the state courts upon what should be deemed public uses in that state, is expressed, justified, and acted upon in Fallbrook Irrigation District v. Bradley ubi supra [164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369], Clark v. Wells ubi supra [Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171] and Strickley v. Highland Boy Mining Co., ubi supra. What was said in these cases need not be repeated here. No case is recalled where this court has condemned as a violation of the Fourteenth Amendment a taking upheld by the state court as a taking for public uses in conformity with its laws. In Missouri Pa-

cific Railway v. Nebraska, ubi supra, it was pointed out (page 416 [of 164 U. S. (17 S. Ct. 130, 41 L. Ed. 489)]) that the taking in that case was not held by the state court to be for public uses. We must not be understood as saying that cases may not arise where this court would decline to follow the state courts in their determination of the uses for which land could be taken by the right of eminent domain. The cases cited, however, show how greatly we have deferred to the opinions of the state courts on this subject, which so closely concerns the welfare of their people. We have found nothing in the Federal Constitution which prevents the condemnation by one person for his individual use of a right of way over the land of another for the construction of an irrigation ditch; of a right of way over the land of another for an aerial bucket line; or of the right to flow the land of another by the erection of a dam. It remains for the future to disclose what cases, if any, of taking for uses which the state Constitution, law, and court approve will be held to be forbidden by the Fourteenth Amendment to the Constitution of the United States."

And in Strickley v. Highland Boy Mining Co., supra, it was said:

"In the opinion of the Legislature and the Supreme Court of Utah the public welfare of that State demands that aerial lines between the mines upon its mountain sides and the railways in the valleys below should not be made impossible by the refusal of a private owner to sell the right to cross his land. The Constitution of the United States does not require us to say that they are wrong."

If the cases to which we have referred do not offend against the Fourteenth Amendment, we are unable to say that a statute authorizing the owner of timber land to condemn a right of way to give access to and remove his timber has that effect.

On the hearing of the petition for the order of necessity, the appellants offered testimony tending to show that the Port Angeles Western Railroad, a public carrier, had already projected a line of railroad through the lands owned by the appellants; had already instituted proceedings for the condemnation of the right of way therefor and that there was nothing in the physical conditions or in the topography of the country that would prevent logging the lands of the appellee over the projected line of railroad. Testimony was also offered tending to show how long it would take to construct the proposed line. This offer was rejected, and in our opinion the ruling was erroneous. The statute only authorizes the taking of private property for a private way when necessary for the proper use and enjoyment of the lands of the condemning party, and as said by the Supreme Court of the state in State ex rel. Carlson v. Superior Court, 107 Wash. 228, 181 P. 689:

"So it may be said that, notwithstanding a statute gives a landlocked owner the right to condemn a way of necessity over the lands of a stranger, it is not a favored statute, and the taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive, for it must be borne in mind that, after all, this is a condemnation proceeding."

If there had been an existing common carrier railroad through the lands of the appellants, over which the appellee could transport its timber and timber products, it would hardly be contended that there was a necessity for another railroad to accomplish the same purpose, and the mere fact that the new road was only projected does not change the rule, for if the appellants were able to satisfy the court that the projected road will be constructed and in operation within what may be deemed a reasonable time under all the circumstances, and that such road will afford reasonable facilities for the removal of the timber and timber products from the lands owned by the appellee, then there is no such necessity for the private way as would justify the exercise of the right of eminent domain under the statute in question.

For error in the rejection of this testimony, the judgment of the court below must be reversed; and it is so ordered.