## McCARTHY et al. v. BLOEDEL DONOVAN LUMBER MILLS.

### No. 5933.

Circuit Court of Appeals, Ninth Circuit.
March 24, 1930.

Joseph McCarthy, of Spokane, Wash., for appellants.

E. S. McCord, Sr., Millard P. Thomas, and Kerr, McCord & Ivey, all of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

DIETRICH, Circuit Judge.

Appellee is the owner of large tracts of timber in Western Washington which it is engaged in logging. For that purpose it constructed and now operates a private logging railroad extending southerly from the seaboard at Clallam Bay to some of its lands. To reach additional holdings it plans to extend this road, and will need a right of way which in part lies across lands belonging to appellants. Not being able to acquire the right by contract, it brought this proceeding in eminent domain. For the background of the issues now submitted, reference may be made to our opinion on a former appeal, Ruddock et al. v. Bloedel Donovan Lumber Mills, 28 F.(2d) 684. Pursuant to our mandate, the court below, after hearings had in compliance with the statutes, entered an order adjudicating use and necessity, and, following a verdict fixing the amount of compensation to be paid, a final decree of appropriation. From this decree three of the four defendants prosecute this appeal.

Aside from the constitutional question ruled by our former decision, in substance the contentions urged by appellants are: (1) That the evidence is insufficient to support a finding of "necessity" for any part of the

desired right of way; (2) that particularly no necessity is shown for what is referred to as the "west branch," a spur about two miles in length leading westerly from what may be denominated the main north and south line; (3) that, if appellee is accorded the right to condemn at all, it should be required to locate its road parallel with and contiguous to the right of way of a proposed extension of the road of the Port Angeles Western Railroad Company, a common carrier; and (4) that the decree is erroneous, in that it is so framed as to deny to appellants a part of their statutory right, in case appellee's road is constructed, to require it to transport timber and other products taken from appellants' adjacent lands. There is also an assignment based upon the court's exclusion of a certain letter offered in evidence by appellants as bearing upon the issue of necessity.

■ The first three specifications are closely interrelated, and in the main all involve the same evidence and call for an application of the same principles of law. Appellee seeks to condemn under authority of chapter 133, p. 412 of the Washington Laws 1913, Remington's Comp. Stat. 1922, §§ 6747–6749. Under the law, admittedly it may take only such a right of way as is "necessary," and the question of necessity is one for the court, to be determined in the light of all the facts. The statute has been construed by the Supreme Court of the state, and by that construction we are bound. The point, however, is not of great importance, for the views of the Washington court are in accord with the doctrine generally prevailing under similar eminent domain statutes. In Samish River Boom Co. v. Union Boom Co., 32 Wash. 586, 73 P. 670, 673, the Washington court said:

"But the word 'necessity,' as used in the statute, 'does not mean an absolute and unconditional necessity, as determined by physical causes, but a reasonable necessity, under the circumstances of the particular case, dependent upon the practicability of another route (here another location), considered in connection with the relative cost to one, and probable injury to the other.' "

And in State ex rel. Postal Telegraph-Cable Co. v. Superior Court, 64 Wash. 189, 116 P. 855, 857, the court said:

"We believe that the correct construction of this statute is that those invested with the power of eminent domain have the right in the first instance to select the land which, according to their own views, is most expedient for the enterprise, and that it invests the court with the power to determine whether specific land proposed to be taken is necessary in view of the general location, and to finally determine the question of necessity for the taking of such specific land when there is evidence of bad faith, or oppression, or of an abuse of the power in the selection.

"Plainly the selection by the condemnor is evidence of the highest character that the land selected is necessary for the enterprise, and in the absence of clear and convincing evidence to the contrary it conclusively establishes the necessity. * * * The condemnor does not have to show an absolute necessity, but only a reasonable necessity. As we have said the prima facie case made by evidence of the selection can only be overcome by clear and convincing proof that the taking of the specific land sought would be so unnecessary and unreasonable as to be oppressive and an abuse of the power."

In State ex rel. Grays Harbor Logging Co. v. Superior Court, 82 Wash. 503, 144 P. 722, 724, it was said:

"The evidence offered went no further than that the route over the N. ½ of section 31 was feasible, and that the road could be constructed there at a reasonable cost. This fell short of meeting the requirements of the rule. In order to justify the court in ordering the change of location of the proposed road, it was necessary to show, not only another route which was practicable, and that the road could be constructed thereon at reasonable cost, but it was necessary to go further and show, by clear and convincing evidence, that, in the selection of the route sought to be condemned, there was bad faith, oppression, or an abuse of power. * * * In determining whether a reasonable necessity exists for the condemnation, it is necessary to look at the entire enterprise rather than to its segregated parts. The Coats-Fordney Logging Company was conducting its logging operations by means of a logging railroad. To log in this manner it was already equipped. Only one of the four tracts of land which it was seeking to reach was located upon the river. To sustain the right to condemn so far as it pertained to reaching the other three tracts of land, and to deny it as to this one, would not seem very reasonable."

And in State ex rel. Stephens v. Superior Court, 111 Wash. 205, 190 P. 234, 235, the court said:

"The selection of the route by the logging company makes a prima facie case of the necessity for taking such specific land, and in the absence of evidence of bad faith, oppression, or abuse of power, evidence that

another route is feasible is not enough to show that the selection of the route sought by the condemnors shows such bad faith, oppression, or abuse of power."

And upon a slightly different phase of the subject, in State ex rel. Skamania Boom Co. v. Superior Court, 47 Wash. 166, 91 P. 637, 638, the court said:

"It also appears that the construction and maintenance upon the proposed route [alternate route] would be very expensive. While this may not of itself be a sufficient reason for taking relator's property, unless it amounts to a practical prohibition, yet, when it is considered in connection with the other elements mentioned, the comparative expense is not an improper matter for consideration in determining as a whole the reasonableness of the appropriation."

We have thus quoted somewhat extensively from the Washington decisions, for the reason that, as we think, the principles thus announced, when applied to the conditions and circumstances here shown under any reasonable view of the evidence, require a rejection of all of the appellants' contentions touching the question of necessity. Its position is that appellee would have ample facilities for transportation in the railroad of the Port Angeles Western and the proposed extension thereof. The Port Angeles Company owns a road constructed by the government during the war thirty-six miles in length. Its easterly terminus is at Disque Junction, where it connects with the Chicago, Milwaukee & St. Paul system, and its westerly terminus is in close proximity to the land in question as well as the southerly terminus of appellee's existing road. Logs shipped over this line would reach the seaboard at Port Angeles, eighteen miles easterly from Disque Junction. Port Angeles is fifty-two miles east of Sekiu on Clallam Bay, the northerly terminus of appellee's road, where it has abundant terminal facilities, and where it contemplates the construction of large manufacturing plants. From a point near the land in question the haul to Sekiu over appellee's road would be approximately twenty-five miles as against fifty-five miles by rail to Port Angeles and water transportation of fifty-two miles from Port Angeles to Sekiu. It is shown that the equipment of the Port Angeles Western Railroad is wholly inadequate, apparently the company is not well financed, and it has been dilatory in making its proposed extension into the locality of appellee's timber lands. Indeed, unless the appellee can be defeated in its plan to extend its railroad over the land in question, it may be doubted whether an extension of the Port Angeles Western will be economically practicable. It is further shown that, if the Port Angeles Western's projected extension is constructed, very extensive auxiliary facilities would have to be provided by the appellee, including spur tracks requiring the condemnation of rights of way. Not only would the cost of transportation be greatly increased as compared with the cost over appellee's road, but the value of the large investment which it already has in its trunk line to Sekiu would be greatly impaired, if not virtually destroyed. The weight of these general considerations is very much enhanced by others involving circumstances, adequate explanation of which would require minute details in great number.

As to the minor points: We find no substantial reason for compelling the appellee to relocate its line so that it will be parallel with, and contiguous to, the proposed but unconstructed road of the Port Angeles Western. It is first in time, is apparently proceeding with diligence, and, if there is any merit in the consideration underlying this contention, it would be more reasonable to require the Port Angeles Western to change its location so as to effect the desired contiguity.

On the subject of the location of the west branch, upon a consideration of the evidence we feel content with the conclusion finally adopted in the trial court.

Only remotely relevant and not highly material is the letter upon the exclusion of which appellants predicate one of their specifications of error. It is clear, we think, that its rejection was without prejudice.

The remaining question arises in this way: The statute (section 6749, Remington Comp. Stat. 1922) provides that the condemnor in such case shall as a condition precedent agree to convey over its road "any of the timber or other produce of the lands through which such right [of way] is acquired at any and all times, so long as said road is maintained and operated, and at reasonable prices; and a failure so to do shall terminate such right of way." The reasonableness of the rates to be charged is committed to the determination of the Public Service Commission.

In the decree the right of way condemned is particularly described as a strip sixty feet wide, that is, thirty feet upon either side of a line, the course of which is fixed by reference to a corner of each forty-acre tract over

which it runs. These forty-acre tracts are embraced within, and are but parts of, a large compact area of land belonging to appellants, and they express concern lest the description be taken as a judicial determination that their right to transportation under the statute above referred to is restricted to the timber upon these particular 40's. While we think such a construction would be a great strain, and appellee disclaims any such thought, and offers to enter into a contract fully complying with the statute, all possible uncertainty may easily be removed by a slight addition to the decree. The lower court will therefore be directed to enter at the foot of the decree: "Nothing herein shall be construed as being intended to restrict or to define the extent of defendants' rights under section 6749 Remington Comp. Stat. 1922."

With that addition, the decree will be affirmed; costs to appellee.