STATE *ex rel.* PEARL W. LYNCH

*v.*

STATE ROAD COMMISSION OF WEST VIRGINIA,
*a corporation,* AND BURL A. SAWYERS,
STATE ROAD COMMISSIONER

(No. 12646)

Submitted September 6, 1967. Decided October 31, 1967.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for relator.

*Anthony G. Halkias,* for respondents.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioner, Pearl W. Lynch, seeks a writ to compel the respondents, the State Road Commission of West Virginia, a corporation, and Burl A. Sawyers, State Road Commissioner, to institute against the petitioner a proceeding in eminent domain for the purpose of ascertaining and determing the damages, if any, caused to the petitioner's property by reason of the construction by the respondents of a certain state road. A rule in mandamus was awarded by this Court on February 20, 1967, returnable April 25, 1967, at which time, on

the motion of the parties, the case was continued generally. On September 6, 1967, the case was submitted for decision on the petition, the answer of the respondents, the replication of the petitioner to the respondent's answer, depositions taken and filed on behalf of the parties hereto and upon briefs and arguments filed and made by counsel for the respective parties.

The petitioner alleges that she is the owner of a certain lot with improvements thereon, situate in the City of Huntington, Westmoreland District, Wayne County, West Virginia, designated at 729 Eloise Street. It is further alleged in her petition that the respondents constructed upon land in the near vicinity of the petitioner's property a public road known as Interstate No. 64; that in the construction of said highway, the respondents caused the vegetation to be removed from nearby land, caused great cuts and fills to be made in the earth, converted and caused streams and drains to be diverted from their natural water courses, erected, or caused to be erected, great embankments with steep-sloped sides, the surface of which was composed of loosely compacted earth which was highly susceptible to erosion by rain and surface waters; that the respondents failed to provide adequate drainage facilities for carrying away the increased runoff of surface waters caused by the construction of said highway; that on numerous occasions, beginning in November, 1964 and continuing to the present time, the surface waters have been caused to overflow and flood the land of the petitioner; and that by reason thereof the petitioner's house and property have been damaged by deposits of mud and debris resulting in a reduction in the value of the property.

The record reveals, and it is admitted by the petitioner, that her property is set at a low level in relation to surrounding land and that prior to the construction of Interstate No. 64 her property on the occasion of heavy rains was subjected to flooding.

However, she relates that the waters which collected were clear and would disappear within an hour, leaving no mud or debris. She now complains, as indicated in her petition, that since the construction of said highway, the flood waters, resulting from heavy rainfalls, have come into her house and have caused mud and debris to be deposited upon her property.

In reply to the petitioner's allegations the respondents deny that the construction of Interstate No. 64 materially altered the flow of surface waters or in any manner caused the damage of which the petitioner complains. Rather, the respondents assert, the damage, if any to the petitioner's property is the result of a combination of conditions, acts and omissions, none of which are attributable to them. They allege that the petitioner's land is situate at a level lower than the surrounding land; that inadequate drainage in the immediate vicinity of her property existed long before the construction of Interstate No. 64; that it is the obligation of the City of Huntington and the petitioner to provide for proper drainage; and that if any damage was caused by the construction of said highway the responsibility therefor is that of the contractor, not the respondents.

Furthermore, the respondents assert that the burden is on the petitioner to prove not only that mud, debris and silt accumulated on her property but must also show what caused such accumulation. This, say the respondents, the petitioner has failed to do.

In a proceeding in mandamus against the State Road Commission it is incumbent upon the petitioner, as in other cases of this nature, to show a clear legal right to the relief sought. *State ex rel. Neal v. Barron,* 146 W. Va. 602, 120 S. E. 2d 702; *State ex rel. Dunn v. Griffith,* 139 W. Va. 894, 82 S. E. 2d 300; *State ex rel. Quick v. Bailey,* 128 W. Va. 123, 35 S. E. 2d 735. The relief sought in this case is a writ to require the State Road Commissioner to institute a proceeding in

eminent domain for the purpose of determining the amount of damage, if any, caused to the petitioner's property by the construction of the said state road. It is not the purpose of the instant proceeding, nor would it here be legally permissible, to consider and determine whether or not damages actually have been caused to the petitioner's property. This can be accomplished only in an action in eminent domain.

The foregoing was clearly stated by this Court in *State ex rel. French v. State Road Commission,* 147 W. Va. 619, 129 S.E. 2d 831, wherein it was said: "While this legal requirement of a showing of 'a clear legal right' is fundamental, it is obviously true also that mandamus cannot be substituted for eminent domain; and it would not be appropriate or legally permissible for the Court to undertake in these proceedings in mandamus to consider and adjudicate the questions which may arise upon proper pleadings and proof in subsequent proceedings in eminent domain."

It has long been established, therefore, that a clear legal right has been shown in a case of this nature when it appears that the petitioner has made a good faith showing of probable damage to his property. *State ex rel. Smeltzer, v. Sawyers,* 149 W. Va. 641, 142 S. E. 2d 886; *State ex rel. Queen v. Sawyers,* 148 W. Va. 130, 133 S. E. 2d 257; *State ex rel. Cutlip v. Sawyers,* 147 W. Va. 687, 130 S. E. 2d 345; *State ex rel. French v. State Road Commission,* 147 W. Va. 619, 129 S. E. 2d 831; *State ex rel. Dunn v. Griffith,* 139 W. Va. 894, 82 S. E. 2d 300; *Riggs v. State Road Commissioner,* 120 W. Va. 298, 197 S. E. 813.

Even though no property has been taken by the state in the construction of a public road, and none was taken in this instance, a landowner is nonetheless entitled to compensation for any damage to his property which results from such construction. This is made eminently clear by the provisions of Article III, Section 9 of the Constitution of West Virginia, wherein it is stated:

"Private property shall not be taken or damaged for public use, without just compensation; * * *." See *Riggs v. State Road Commissioner*, 120 W. Va. 298, 197 S. E. 813.

For the purpose of determining whether the petitioner has made an adequate showing of probable damage to her property, and, consequently, a showing of a clear legal right to the relief sought, it is now necessary to consider the evidence presented in this proceeding.

In support of the allegations in her petition, Pearl Lynch testified that although prior to the construction of Interstate No. 64 her property was subjected to minor flooding, since said construction the flooding is of a more serious nature; that formerly the water would subside within forty-five minutes to an hour, leaving little or no evidence thereof; that the water now remains for as long as twenty-four hours and is muddy, leaving a heavy residue of mud and silt over her property including deposits on the lawn and in the garage; that mud and debris from the fill on the location of the new road washed down and caused the storm sewers to be stopped up, resulting in the damage of which she complains; and that such condition has occured on almost every occasion of a heavy rainfall since the construction of Interstate No. 64.

Mr. Lucian Harrison, city engineer for the City of Huntington, testifying on behalf of the petitioner, expressed his opinion that the construction of the new road caused an additional runoff of water to converge on the storm sewer; that the fresh fill caused an accumulation of mud in said sewer which had never occurred prior to the subject construction; and that the condition described by the petitioner was largely caused by the construction of Interstate No. 64.

Mr. Robert H. Uhl, a civil engineer who worked on the design of Interstate No. 64, testified on behalf of the respondents. He stated that the city drainage system was inadequate, although he acknowledged that

he was acquainted only with the design and knows nothing of the fill formed in the construction or of any other work done in connection therewith. He stated that the wooded area in which this road was built was "skinned" and when that occurs the amount of mud directed into the sewer would necessarily be increased.

Mr. Joseph S. Jones, a state road engineer, said that he does not know of any feasible way to keep the mud from washing down from the fill. He said: "When you disturb the natural lay of the land, you naturally have some type of run-off that the water pushes down because of disturbing it." This witness had not seen the petitioner's property and knew nothing of the alleged damages.

Mr. Bridges Kidd, a state road engineer testifying on behalf of the respondents, related the elevations of the newly constructed road and the petitioner's property, showing that the latter was at a lower level. He said that water accumulated in that area from several directions; that the city storm sewers had always been inadequate to take care of drainage; and that he saw no reason for this construction to cause damage to the petitioner's property. On cross examination he acknowledged that fresh dirt would wash off of the newly constructed fill but could not say that this was the entire cause of the stoppage of the storm sewers.

Pearl McKinney, a neighbor of the petitioner, was a witness for the respondent. Her testimony supported that of the petitioner in almost every respect.

The testimony and allegations of the parties in relation to the alleged damage are in conflict. This is not unusual in our adversary system of justice. However, as hereinbefore related, in a proceeding of this nature, we are not called upon to determine whether or not the respondent has actually caused damage to the petitioner's property. It is sufficient if the petitioner has made a good faith showing of probable damage.

Viewing the evidence, we are of the opinion that the showing made by the petitioner is sufficient to entitle her to have the controversy adjudicated in a proceeding designed for that purpose. In the eminent domain proceeding which will follow, the matters here in conflict will be determined and the question of liability, damages and the amount thereof, if any, will be adjudicated. Where a showing of probable damage has been made in a case of this nature, fundamental principles of justice require the granting of an opportunity to a property owner to have his claim judicially determined. This is in line with former decisions of this Court as evidenced by the following language found in *State ex rel. Griggs v. Graney,* 143 W. Va. 610, 103 S. E. 2d 878: "\* \* \* and although the damage may be such as is not that for which the State may be liable, the petitioners, having in good faith shown such probability, are entitled to a full judicial hearing and a determination of the question, \* \* \*."

For the reasons stated herein, the writ of mandamus prayed for is awarded.

*Writ awarded.*