STATE *ex rel.* JOHN C. TETER, *et al.*

*v.*

STATE ROAD COMMISSION OF WEST VIRGINIA, *et al.*

(No. 12743)

Submitted March 11, 1969.          Decided March 25, 1969.

*Bonn Brown, Louis R. Tabit*, for relators.

*John E. Busch, Jr.*, for respondents.

BERRY, JUDGE:

This is a proceeding in mandamus instituted under the original jurisdiction of this Court by the petitioners, John C. Teter and Gladys M. Teter, to compel the respondent the State Road Commissioner to institute condemnation proceedings against them to ascertain the damage which they allege was caused to their property by the construction of a new highway adjacent thereto, causing the casting of a body of water onto their premises. The rule in mandamus was granted on May 27, 1968 for the respondent to show cause why a writ of mandamus should not be awarded directing the respondent to institute condemnation proceedings, the rule having been made returnable September 4, 1968. After several continuances the case was submitted for decision on arguments and briefs March 11, 1969 at the January Regular Term, 1969. This proceeding was instituted by virtue of the provisions of Section 9 of Article III of the Constitution of West Virginia, wherein it is stated that private property shall not be taken or damaged for public use without just compensation. The petitioners named both Commission and Commissioner as respondents but for the sake of simplification we treat them as one.

The petitioners are joint owners of real estate alleged to be damaged lying between an old and a new road and consisting of lots 14 and 15, block 1, Schoonover Addition, Leadsville District, Randolph County, West Virginia. Old Route U. S. (W. Va.) 219/250, from Elkins to Beverly ran in front of the petitioners' property, and the water drainage in front of their lots ran along the edge of the

old road toward Isner Creek in a southerly direction. On the back of their lots the drainage originally ran in a westerly direction from the rear of their property and apparently across the area where the new highway was later constructed and followed a natural slope turning south to Isner Creek. The new road bearing the same numbers was constructed behind the petitioners' property some time during 1966 or 1967 and was raised about 18 feet above the former level of the land in that area and thus occupies the land that formerly drained the surface water into Isner Creek. The new road crossed, or went over, a street known as Russell Street which the petitioners allege was the natural drainage course of the water from the front to the rear of their property as this street ran down the north side of petitioners' property from front to rear. The new road having thereby blocked Russell Street, petitioners claim that the surface water stopped at the fill of the new road and flooded the rear of their lots.

Consequently, it is the contention of the petitioners that the building of the new road in this area created a dam-like barrier sitting on the natural drainage slope and prevented the water from draining into Isner Creek as it formerly did. The petitioners say they requested the State Road Commission to place a culvert under the road to allow the water to drain from the vicinity of Russell Street as it formerly did, but that the request was refused.

The State Road Commission constructed a ditch across Russell Street and along the rear of the petitioners' property in a southerly direction to Isner Creek. The petitioners claim this ditch is not sufficient to drain from their property the water which is thrown on it by virtue of the new road, because the area where the water pools on their property is lower than the course of the ditch. The respondent contends that the ditch is of proper slope and sufficient to carry the water away and is never over a quarter or half filled after a heavy rainfall.

It is the contention of the respondent that buildings erected by petitioners and third persons and surrounded by paved parking lots have been placed in the area north of

petitioners' lots 14 and 15 and that the area paved to the north of the petitioners' property including what is left of Russell Street which has been black-topped since the road was built cause the water to run down over the rear of the petitioners' property from the east coming from the opposite direction of the new road. Furthermore, respondent asserts that other water comes out of a defective drainage line at the edge of the old road in front of petitioners' property for which defect the property owners were alleged to be responsible.

Water is drained toward the petitioners' property from one-half of the new road and down the 18 foot embankment. The other half drains to the other, or west, side of the new road, so does not strike petitioners' property.

Photographs filed with the petition show a large body of water on the petitioners' property, apparently caused by rainfall. It is the contention of the petitioners that this condition did not exist prior to the building of the new road, while the contention of the respondent is that the building of the new road did not cause any additional water to be cast on the petitioners' property, and that it was about the same as before the new road was built except more water came from the north and eastern side off the paving of the area north of the petitioners' lots 14 and 15 which when paved prevented water from soaking in the ground. The respondent also insists that the defective drainage in front of the petitioners' property is gradually aggravating the burden on petitioners.

The petitioners have a home and two small outbuildings on lots 14 and 15 and it is claimed by them that the outbuildings have been continually flooded since the building of the new road. They also own a small food store with apartments above it located on lot 16. Alongside this store is a paved parking strip with an adjoining curb running nearly to the rear of lot 15 almost to Russell Street which channels water to the rear of lots 14 and 15. Water also runs from the center or crown of the new highway toward the rear of lots 14 and 15.

The allegations contained in the petition are denied in the respondent's answer and the evidence with regard to the damage caused by the building of the new road is highly conflicting. The allegations and evidence introduced by way of depositions by the petitioners would warrant the relief prayed for. The pleading and evidence of the respondent would not warrant the granting of relief prayed for.

In such case the property owners should be afforded an opportunity for judicial determination of any bona fide claim of damage to their property on account of the construction of the new highway involved herein. *C. W. Riggs* v. *State Road Commissioner,* 120 W. Va. 298, 197 S. E. 813; *State ex rel. Griggs* v. *Graney,* 143 W. Va. 610, 103 S. E. 2d 878.

In cases of this kind where the evidence is conflicting but there is reason to believe that the construction of the road by the respondent could have caused damage to the petitioners' land and the evidence indicates that there was probable damage, a writ of mandamus will lie to require the institution of eminent domain proceedings in order to have a jury to determine such matters. The principle involved herein is clearly stated in the first syllabus point in the case of *State ex rel. Griggs* v. *Graney, supra,* wherein it is stated: "If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings."

Although if there is reason to believe in a mandamus proceeding that a highway construction or improvement has resulted in probable damage to private property without the actual taking thereof and the landowner in good faith claims compensation therefor, a clear legal right has been established for the granting of the writ to require the

810

State Road Commissioner to institute proper proceedings in eminent domain to ascertain the compensation, if any, to which the landowner might be entitled; but such action in granting the writ can not be construed in any way an expression or holding by the court that the petitioners are entitled to prevail in the eminent domain proceeding or that the contention of the respondent will or will not prevail and prohibit any award of damages to the petitioners. *State ex rel. French* v. *State Road Commission,* 147 W. Va. 619, 129 S. E. 2d 831. In any event, even though the constitution, Article III, Section 9, and statutes in pursuance thereof, provide that private property shall not be taken or damaged without just compensation, before any recovery for damages can be had in cases of this kind, liability on the part of the respondent is governed in the same manner as liability against private individuals, and the construction of the road or highway must in some way be responsible for the casting of water in a body onto the property of petitioners and as the result thereof cause damage to the property of petitioners. 20 M. J., Waters and Watercourses, Section 7; *Jordan* v. *City of Benwood,* 42 W. Va. 312, 26 S. E. 266, 36 L.R.A. 519; *McCray* v. *Town of Fairmont,* 46 W. Va. 442, 33 S. E. 245; *Lindamood* v. *Board of Education of Williamson Independent School District,* 92 W. Va. 387, 114 S. E. 800.

For the reasons stated herein, the writ prayed for is granted.

*Writ granted.*