STATE *ex rel.* THE PHOENIX INSURANCE COMPANY, *etc.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12864)

STATE *ex rel.* KATHLEEN THOMAS, *Executrix, etc., et al.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12865)

STATE *ex rel.* THE TRUSTEES, KANAWHA AERIE No. 1040,
FRATERNAL ORDER OF EAGLES, *a corp.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12870)

STATE *ex rel.* LOUIS F. MURAD, *et al.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12872)

STATE *ex rel.* POSEY A. MARTIN, *et al.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12873)

STATE *ex rel.* PROGRESSIVE INVESTMENTS, INC., *a corp.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12874)

STATE *ex rel.* ANDREW A. TABIT, *et al.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12875)

*and*

STATE *ex rel.* WILSON JACOBS, *et al.*

*v.*

WILLIAM S. RITCHIE, JR., STATE ROAD COMMISSIONER
OF W. VA.

(No. 12871)

Submitted May 5, 1970.　　　　　Decided June 23, 1970.

Dissenting Opinions June 23 and July 7, 1970.

*George L. Vickers, Carl B. Vickers,* for relators Phoenix Ins. Co., Kathleen Thomas, and others.

*Louis R. Tabit,* for relators Trustees, Kanawha Aerie No. 1040, Fraternal Order of Eagles and all others.

*Claude H. Vencill,* Legal Division, State Road Commission, for respondent William S. Ritchie.

*John Krivonyak,* Legal Division, State Road Commission, for William S. Ritchie in No. 12871.

BROWNING, PRESIDENT:

These eight cases are original proceedings in mandamus, and there are common questions of fact as to each and common questions of law as to the first seven but not as to the eighth, *Phoenix Insurance Company v. The State Road Commissioner.* The petitions allege that on October 11, 1967, the Mountain State Construction Company, working pursuant to a contract with the State Road Commission and doing certain excavation and construction work with respect to the rebuilding

of West Virginia Route 61, caused large volumes of water to flood many portions of the City of Montgomery, damaging the real property of all of the petitioners herein. This flood was allegedly caused by the construction company's excavation of an abandoned mine on a hillside overlooking Montgomery, the property belonging to one Woodrow Wilson Jacobs. The respondent had acquired a right-of-way over Jacobs' property to do the work in question. Each petition alleges the damage done to the property by virtue of the enormous amount of water which was released upon a portion of the town.

All parties to these controversies have stipulated that the evidence, exhibits, etc., considered by this Court in *State ex rel. Firestone Tire & Rubber Co. v. Ritchie,* 153 W.Va. 132, 168 S.E.2d 287, are applicable to these cases, and their motions that the depositions taken in that case be incorporated in these cases have been granted.

In the *Phoenix* case, that being heretofore referred to as the eighth case, the petition alleges the destruction of a certain two-story brick business building in Montgomery, owned by Anna Ricardi, a widow, and J. W. Ricardi and Yolanda Fudge, the children of the deceased husband. The destruction of the building resulted from "a devastating fire," allegedly as a direct result of the flood, which caused damages in the amount of $37,536.47. Phoenix carried the fire and casualty insurance on the building and, pursuant to the policy, paid the aforementioned amount to Anna and J. W. Ricardi. All of the petitioners, including Phoenix, have demanded compensation from the respondent or, in the alternative, that he institute eminent domain proceedings, all of which he has refused.

The petitioners allege that they have established a clear legal right to writs of mandamus against the respondent to compel him to institute condemnation proceedings for the purpose of ascertaining the value of the property damaged or destroyed and that a jury of freeholders determine the value thereof.

In all cases respondent answers by saying that on December 28, 1966, the State Road Commission entered into a contract with Mountain State Construction Company to do certain highway construction work on a portion of West Virginia Route 61 in Montgomery, including a ramp extending from the relocated route to a new bridge spanning the C. & O. Railroad. The ramp construction involved some excavation of the foot of a hillside on the Jacobs' property and "some sloping and benching of the hillside." During construction some additional excavation became necessary during which old mine timbers and eventually the mine entry itself were encountered. The entry was followed toward the hillside about thirty-five feet before the contractor ended the day's work on October 11, 1967. About two and one-half hours later "large volumes of waters broke loose at some point inside said hillside, came out through said excavation, and overflowed certain areas of the City of Montgomery." Respondent admits that compensation for the resulting damage was demanded by the petitioners, but denies that they were entitled to that compensation. Respondent further alleges that neither he nor his predecessor in office had any knowledge of the existence of the water in the mine since core drillings made into the hillside indicated "no flowing water or consistent water elevation."

It is respondent's contention that if anyone is liable for these damages, it is the contractor, since its contract incorporated the "Commissions Standard Specifications, Roads and Bridges, 1960, Sections 1.7.6 and 1.7.10," which, according to the respondent, "require the construction contractor to conduct the work in such a manner as to provide and insure the safety and convenience of the public and private property along and adjacent to the highway under construction, and to indemnify and save harmless the State Road Commission of West Virginia from any and all actions or claims brought for any damages to any person or property by reason of the contractor's acts or failure to take suitable precautions to prevent damages . . . ." In the alternative, respondent suggests that the responsibility is that of the mine owner, Jacobs.

In a supplemental answer, respondent notes also that since the filing of the petitions in these cases, the petitioners have instituted civil actions in the Fayette County Circuit Court against the contractor, and filed claims in the State Court of Claims against the State Road Commissioner.

These cases were submitted for decision upon oral argument and briefs on May 5, 1970. It is the view of this Court, for reasons to be hereinafter stated, to grant writs of mandamus as prayed for in seven of the above-styled cases and to deny the writ of mandamus in case No. 12864, the *Phoenix* case.

It is alleged and not denied in these proceedings that the owners of the damaged or destroyed real property were without fault of any kind and contributed in no way to the flooding of the city or to their losses. It is also alleged and not denied that these petitioners are seeking compensation for their damages in civil actions in the Fayette County Circuit Court alleging negligence on the part of the contractor and that they have filed claims with the State Court of Claims against the State Road Commissioner. We are, of course, not called upon to determine whether they can prevail in any of the above-mentioned actions or proceedings, and, of course, they can be compensated only once for their losses if they can prevail. It might well be that one or more of these cases will come back to this Court for final adjudication regardless of what results either in the Circuit Court of Fayette County, the Court of Claims, or pursuant to its recommendation, the action of the legislature with regard to what has come to be called a "moral obligation." We have before us only the question of whether a proper showing has been made for requiring the respondent to institute eminent domain proceedings against the petitioners in the Circuit Court of Fayette County.

Article III, Section 9, of the Constitution of this State provides that "[p]rivate property shall not be taken or damaged for public use, without just compensation . . . ." However, Article VI, Section 35, of the Constitution provides that "[t]he State of West Virginia shall never be made defendant in any court of law or equity . . . ." These constitutional

provisions appear to be irreconcilable, but this Court has held that if the State Road Commissioner abuses his discretion in failing to institute an action of eminent domain against a property owner who alleges that his property has been taken or damaged as a result of the construction of a public highway, such commissioner will by this Court be directed in a mandamus proceeding to institute such action to determine whether property has been taken or damaged and, if so, the amount of damage the property owner has suffered. *State ex rel. Smeltzer v. State Road Commissioner,* 149 W.Va. 641, 142 S.E.2d 886, and cases cited therein.

It is true that the property damaged was not a part of the residue of the Jacobs' property over which the respondent has secured a right-of-way, and it is also true that the property damaged was not adjacent thereto. However, Article III, Section 9, of the Constitution of West Virginia succinctly provides that "[p]rivate property shall not be taken or damaged for public use, without just compensation . . . ." Note that this provision contains no limitation to residual or adjacent property. The same factual situation prevailed in the very recent case of *State ex rel. Lynch v. State Road Commissioner,* 151 W.Va. 858, 157 S.E.2d 329, and this Court unanimously held that a writ should be awarded directing the State Road Commissioner to institute eminent domain proceedings to ascertain if the petitioner's property had been damaged and, if so, to what extent. In the *Smeltzer* case, in which a writ was awarded, the damage was to property adjoining that over which the road was being constructed and that, too, was a unanimous decision of this Court. This statement is contained in *Smeltzer*:

> The clear legal right which a petitioner must show in such cases is not that he has been damaged or what the amount of the damages is, but that there is reasonable cause to believe that these questions should be resolved by a judge and a jury of freeholders in the county in which the property is located.

There are many decisions of this Court to the same effect, some of which are cited in the *Lynch* and *Smeltzer* cases. The

following paragraph from *Hardy v. Simpson,* 118 W.Va. 440, 190 S.E. 680, best summarizes this Court's position regarding the instant cases:

> This leads us to a consideration of the rights of the landowner in a case such as is presented here. That she has rights, and that some way should be found to enforce them is clear; the plain provision of the constitution, with respect thereto, cannot be ignored. If the landowner cannot sue the road commission to recover damages; if she cannot resort to the remedy of injunction to protect such rights; and if she has no other remedy; the plain provisions of the constitution are nullified. This cannot be. Courts are always jealous of the rights of private citizens when such rights clash with the power of the state. While our *statutes,* covering the taking of private property under the powers of eminent domain, only apply, in direct terms, to the actual taking of property, these provisions must be held, in order to give effect to the constitution, to cover cases where there is damage to property, as distinguished from the actual taking thereof. Therefore, *a duty rests on the state to take necessary steps under our condemnation statutes to ascertain damages to the owners of private property, whether the same is actually taken, or damaged only.* (Emphasis added.)

The respondent vehemently maintains that this record shows that the damage to the petitioners' property was due to negligence and, since the State can never be made a party to an action for damages for negligence, that the writs should be denied, as the granting of them and the institution of actions of eminent domain is indirectly permitting the petitioners to secure possible recoveries against the State for negligence. Inasmuch as eminent domain proceedings are to be instituted as a result of the writs in seven of these cases and since there is pending against the construction company an action for damages as a result of its negligence, it would not be appropriate for this Court to discuss in detail the question of whether there was or there was not negligence resulting in the damage to petitioners' property; however, we are of the view that if "private property" is "damaged" by the negligence of the State in the construction of a public

highway, such negligence is not a bar to recovery by the injured party in eminent domain and no such strict application should be given to the above-quoted language from Article III, Section 9, of the Constitution of this State. We believe the following decisions of this Court are consistent with that holding: *State ex rel. Teter v. State Road Commission*, 152 W.Va. 805, 166 S.E.2d 757; *State ex rel. Smeltzer v. State Road Commissioner*, 149 W.Va. 641, 142 S.E.2d 886; *State ex rel. Murray v. Graney*, 143 W.Va. 643, 103 S.E.2d 888; *State ex rel. Griggs v. Graney*, 143 W.Va. 610, 103 S.E.2d 878; *Appalachian Electric Power Co. v. State Road Commissioner*, 141 W.Va. 769, 93 S.E.2d 25; *Hardy v. Simpson*, 118 W.Va. 440, 190 S.E. 680; *Cline v. Norfolk & Western Ry. Co.*, 69 W.Va. 436, 71 S.E. 705. Furthermore, the fact that there is an agreement between the respondent and Mountain State Construction Company "to indemnify and save harmless the State Road Commission of West Virginia from any and all actions or claims brought for any damages to any person or property by reason of the contractor's acts or failure to take suitable precautions to prevent damages . . ." in no way affects the petitioners' right to have their cases adjudicated in eminent domain proceedings, and if the respondent has a judgment or judgments entered against him and is able to recoup the losses as a result of this agreement, the taxpayers will be relieved of that financial burden.

It should be pointed out here that this Court notes the issue of ownership of the various properties in question as raised by respondent's demurrer and discussed in respondent's briefs. We do not feel that it is necessary in this proceeding to determine either the factual or legal issues raised with regard to this matter, and will leave them for determination by the circuit court in the eminent domain proceedings. It might be added that if the parties herein felt that this was a factual issue that should be resolved by this Court, they should have introduced other evidence bearing upon the matter, but, of course, this is of no import in light of our holding.

It is the view of this Court that the writ should be denied in the *Phoenix* case for the reason that the property owners

have suffered no loss as a result of the flooding of their property, they having been fully reimbursed by the Phoenix Insurance Company, and neither Article III, Section 9, of the Constitution of this State nor the enabling statutory legislation was intended to apply to a subrogee. Phoenix Insurance Company received premiums for its insurance upon this property and when the damage was incurred, it paid the insured as provided in the contract of insurance between the parties. Therefore, the writ in that case will be denied.

In No. 12865, *State ex rel. Kathleen Thomas, Executrix, etc., et al. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia;* No. 12870, *State ex rel. The Trustees, Kanawha Aerie No. 1041, Fraternal Order of Eagles, a corp. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia;* No. 12872, *State ex rel. Louis F. Murad, et al. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia;* No. 12873, *State ex rel. Posey A. Martin, et al. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia;* No. 12874, *State ex rel. Progressive Investments, Inc., a corporation v. William S. Ritchie, Jr., State Road Commissioner of West Virginia;* No. 12875, *State ex rel. Andrew A. Tabit, et al. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia* and No. 12871, *State ex rel. Wilson Jacobs, et al. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia,* the writs will be awarded against William S. Ritchie, Jr., in his official capacity, granting the relief prayed for. In No. 12864, *State ex rel. The Phoenix Insurance Co., etc. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia,* the writ will be denied.

*Writs awarded and denied.*

BERRY, JUDGE, dissenting:

I dissent from the majority opinion in these combined cases because I do not think there is any provision under the law to authorize the State Road Commissioner to institute eminent domain proceedings to pay for damages caused to petitioners' property by water negligently or otherwise released from the ground several hundreds of feet from the petitioners' property

from the property taken under an eminent domain proceeding, which had no connection therewith. Therefore, mandamus would not lie to compel the improper or illegal action to be taken and would amount to an indirect suit against the state, in violation of Article VI, Section 35, of the Constitution of West Virginia.

It is true that Article III, Section 9, of the West Virginia Constitution provides that private property shall not be taken or damaged for public use without just compensation but it further provides that the compensation to the owner shall be ascertained in such manner as may be prescribed by general law. There is no general law to allow eminent domain proceedings to be instituted to condemn the property alleged to have been damaged in the instant case and the provision of the Constitution providing that private property shall not be taken for public use without just compensation is not self-executing as far as the State of West Virginia is concerned because under the provisions of Article VI, Section 35, of the Constitution of West Virginia: "The State of West Virginia shall never be made defendant in any court of law or equity * * *."

The general law enacted by the legislature with regard to jurisdiction in eminent domain proceedings is contained in Code, 54-2-1, and provides as follows: "In any case in which property may lawfully be taken for a public use, application may be made by petition to the circuit court or the judge thereof in vacation, of the county in which the estate is situated, * * *."

Code, 54-2-9 and 10, both as amended, provide for the only method in eminent domain proceedings for compensation to the owner of private property taken or damaged under the provisions of the Constitution, and that is for the property proposed to be taken and for the damage to the *residue* of such real estate beyond all benefits which may be derived in respect to said residue. Code, 54-2-9, as amended, refers to such damage that may be allowed by commissioners and Code, 54-2-10, as amended, refers to such damage that may be ascertained by a jury that may be allowed in such proceedings in this State. See *Strouds Creek and Muddlety*

*Railroad Company v. Herold, et al.,* 131 W.Va. 45, 45 S.E.2d 513. Chapter 54 of the Code of West Virginia is the only general law relative to eminent domain proceedings and eminent domain statutes are strictly construed. *State of West Virginia by the State Road Commission v. Bouchelle,* 137 W.Va. 572, 73 S.E.2d 432.

It has been repeatedly held that damage to the land caused by trespass thereon or by negligent or unskillful manner of construction is not recoverable in condemnation proceedings even where such damage is done to the residue of such property taken but will constitute a basis for a separate and independent action. *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co. et al.,* 75 W.Va. 423, 83 S.E. 1031; *State of West Virginia by the State Road Commission v. Boyd, et al.,* 129 W.Va. 715, 41 S.E.2d 665. It was held in the *Strouds Creek & Muddlety Railroad Co. v. Herold, supra,* case that: "The evidence tends to show that the location and the construction of the drains were the result of negligent or unskillful conduct of the applicant. Damages to the residue of land not taken which result from the negligent or unskillful conduct of the condemnor in the construction of a railroad or other public improvement upon the land taken may not be recovered in a condemnation proceeding. Damages so inflicted constitute the basis for a separate and independent action."

In the case at bar no property of the petitioners was taken for public use. Therefore, there could not be any damage to the residue because no property was taken belonging to the petitioners. Then, too, it is clear that the damage to petitioners' property was caused by trespass or negligence in the same manner as if a State Road Commission truck used in the construction of a highway had run into the petitioners' property and damaged it. The question involved in this proceeding was decided by this Court by a unanimous decision in the case of *State ex rel. Firestone Tire & Rubber Co. v. Ritchie,* 153 W.Va. 132, 168 S.E.2d 287, in which it was held that mandamus would not lie in such a case with the facts identical to the facts in this case and the property involved in the same location. It is true that most of the damage in the *Firestone* case was to personal property but it also involved

real property inasmuch as a leasehold was also involved. In a more recent case by a unanimous decision of this Court in the case of *Wheeling Electric Company v. Gist,* 154 W.Va. 69, 173 S.E.2d 336, it was held that damage negligently caused in a condemnation proceeding cannot be obtained in such proceeding but must be the subject of a separate action.

It was pointed out in the *Firestone* case that where the Constitution provides that private property shall not be taken for public use without just compensation the general law must provide for the compensation for such property taken or damaged unless the provisions in the Constitution are self-executing, such as against public utilities and municipal corporations authorized to institute eminent domain proceedings by virtue of the fact that they can be sued by common-law action but the State of West Virginia cannot be sued by common-law action. This matter is discussed in 2 NICHOLS ON EMINENT DOMAIN, Third Edition, at page 498, as follows: "The 'damage clause' is generally held to be self-executing; that is, if the legislature authorizes the construction of a public work which may injuriously affect neighboring property and fails to provide a special procedure for ascertaining and recovering damages, the statute authorizing the work is not treated as unconstitutional, but the owner of the injured property is allowed to recover his damages in an ordinary civil action."

There appears to be some confusion in some comparatively recent cases with regard to whether the State may be compelled by mandamus to institute eminent domain proceedings to pay for damages to property caused in the construction of a highway which had not been taken for the actual construction of the highway. *Riggs v. State Road Commissioner,* 120 W.Va. 298, 197 S.E. 813; *State ex rel. Griggs v. Graney,* 143 W.Va. 610, 103 S.E.2d 878; *State ex rel. Queen v. Sawyers,* 148 W.Va. 130, 133 S.E.2d 257. In the *Griggs, supra,* case, it was held that: "If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion

of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings." The cases of *State ex rel. Lynch v. State Road Commission*, 151 W.Va. 858, 157 S.E.2d 329 and *State ex rel. Teter v. State Road Commission*, 152 W.Va. 805, 166 S.E.2d 757, follow the *Riggs* and *Griggs* cases. Both of these cases cite the syllabus point in the *Griggs* case as authority in the disposition of these cases. It is not clear in some of these cases as to whether the damage claimed for property not taken was damage to the residue which would be proper consideration for recovery of damage in eminent domain proceedings under Chapter 54 of the Code of West Virginia, the general law for the execution of provisions of the Constitution providing that private property shall not be taken or damaged without just compensation. However, in the *Lynch* case there is no question but that the damage was not damage to the residue of any property taken for the construction of the highway. It was separated for some considerable distance from the property taken for the easement for the construction of the highway, and water had flowed over other land between the highway and the property alleged to have been damaged, and yet the writ of mandamus was awarded to compel the State Road Commissioner to institute eminent domain proceedings to ascertain damages to the petitioner's property. I am of the opinion that this case is clearly wrong and if any damage was caused to the petitioner's property by virtue of any negligent action on the part of the State Road Commission in the construction of the highway that a claim should have been made before the Court of Claims in an effort to have the legislature declare it to be a moral obligation and appropriate the money to pay for any such damage, or that an action to recover damages should have been instituted against the contractor who built the road. In the *Teter, supra,* case it is not clear as to whether the water which was cast onto petitioner's land could be considered as damage to the residue caused by the construction of the highway from property taken from the petitioner for the construction thereof.

In the instant case it is clear that the damage to the petitioners' property was caused by a trespass or negligence, and

that their properties lie on the other side of a railroad track and several hundred feet from the highway which had been constructed. The petitioners' property had nothing whatsoever to do with such construction. The damage was caused by either trespass or negligence which is subject to a separate common-law action and in such case there is no provision for eminent domain proceedings to compensate the petitioners for damage to their property.

It is true that if a public utility had negligently caused such damage in an authorized construction, under Chapter 54, the Eminent Domain Statute, a separate action could be brought against the public utility. It is also true that a separate action may be maintained against the contractor in the case at bar. *Whitney v. Ralph Myers Contracting Corp.*, 146 W.Va. 130, 118 S.E.2d 622; *Perdue v. S. J. Groves & Sons Co., et al.*, 152 W.Va. 222, 161 S.E.2d 250. A claim could also be filed in the Court of Claims against the State Road Commissioner, as indicated above.

For the reasons stated in this dissenting opinion, I would deny the writ for the reason that eminent domain proceedings by the state are not authorized in such cases.

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent. I would deny the relief sought in each of these mandamus proceedings on the ground that eminent domain is not a proper procedure by which the landowners in these cases may obtain a recovery of damages from the state road commission.

In my judgment, the Court in these cases, for the first time, is requiring the state road commissioner, (or the state commissioner of highways), to institute eminent domain proceedings in order to permit recovery for damages which have not been caused purposely or designedly and which, at most therefore, were caused negligently to property owners, wholly contrary to any intent or purpose of any representative of the state. For the first time, I believe, the Court is requiring the state road commissioner to institute eminent

domain proceedings to ascertain the amount of damages which were not, in any sense or degree, inflicted or caused "for public use," and accordingly the Court is ordering that such damages, when the several amounts thereof are ascertained in wholly inappropriate proceedings, shall be paid by the state road commission from funds which may be expended only "for public use" or for a public purpose.

"Eminent domain is generally defined as the power of the nation or a sovereign state to take, or to authorize the taking of, private property *for a public use* without the owner's consent, conditioned upon the payment of just compensation." (Italics supplied.) 26 AM. JUR. 2d, *Eminent Domain*, Section 1, page 638. "The general rule is that in the exercise of the right of eminent domain private property can be taken *only for a public purpose or use*. In other words, it is settled generally that private property *cannot be taken for other than a public use under any circumstances.*" (Italics supplied.) 26 AM. JUR., *Eminent Domain*, Section 25, page 668. "The right of eminent domain is defined to be the right on the part of the state to take or control the use of private property *for the public benefit when public necessity demands it.*" (Italics supplied.) 6 M.J., *Eminent Domain*, Section 3, page 690. To the same effect, see 29A C.J.S., *Eminent Domain*, Section 1, page 161. Implicit in these and other definitions of eminent domain is the basic principle that the inherent power of the state to take or to damage private property exists only when public purposes are thereby subserved and the corollary that the state cannot expend public funds in the taking or damaging of private property by eminent domain proceedings unless the public purposes are thereby promoted or subserved.

"It is fundamental that the power to appropriate private property for public use is an attribute of sovereignty and is essential to the existence of government. The power of eminent domain does not depend for its existence on a specific grant in the Constitution; it is inherent in sovereignty and exists in a sovereign state without any recognition thereof in the Constitution. It is founded on the law of necessity. The provisions found in most of the state constitutions relating to the taking of property for the

public use do not by implication grant the power to the government of the state, but limit a power which would otherwise be without limit. This power existed in each of the original thirteen states immediately on the assumption of independence; and on the admission of a new state it at once becomes entitled to, and possessed of, all the rights which belonged to the original states, including the power of eminent domain, free from any restrictions except those contained in its constitution and that of the United States." 26 AM. JUR. 2d, *Eminent Domain*, Section 2, pages 639-40.

Article III, Section 9, of the Constitution of West Virginia provides: "Private property shall not be taken or damaged *for public use*, without just compensation; * * * and when private property shall be taken, or damaged, *for public use,* * * * the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; * * *." (Italics supplied.) This constitutional provision does not create, broaden or enlarge the inherent power of the state to take or to damage private property for public purposes. Rather it merely restricts the power by requiring payment of just compensation. *State v. Cooper,* 152 W.Va. 309, 312-13, 162 S.E.2d 281, 283; *State v. Professional Realty Company,* 144 W.Va. 652, 657, 110 S.E.2d 616, 620.

The purposes for which the state may pay compensation from public funds for private property taken or damaged are measured and limited, therefore, by the attributes of sovereignty inherent in the state. Such purposes have not been enlarged by the Constitution. They have not been, and constitutionally could not be, enlarged by statute.

Early in the history of the state, this Court, in the first point of the syllabus of *F. R. B. Cemetery Ass'n. v. Redd,* 33 W.Va. 262, 10 S.E. 405, made the following statement of an obvious, fundamental constitutional principle: "Under our constitution private property can be taken only for public use." See also *Gauley & Summersville Railroad Co. v. Vencill,* 73 W.Va. 650, 80 S.E. 1103; *Hench v. Pritt,* 62 W.Va. 270, 57 S.E. 808; *Varner v. Martin,* 21 W.Va. 534. "Whether the *use* for which private property may be condemned is *public,*

is a question for judicial determination." (Italics supplied.) *Gauley & Summersville Railroad Co. v. Vencill*, 73 W.Va. 650, pt. 3 syl., 80 S.E. 1103. To the same effect, see *State v. Bouchelle*, 137 W.Va. 572, pt. 2 syl., 73 S.E.2d 432.

Article II, Section 6, of the West Virginia Constitution of 1863 provided: "Private property shall not be taken for public use without just compensation." In the Constitution of 1872, the words "or damaged" were inserted; but the qualifying, restrictive phrase, "for public use", remains unchanged. The inherent power of the sovereign to take or to damage private property continues to be restricted to a taking or damaging "for public use". Beyond that point, the right of the owner of private property remains inviolate against any invasion by the inherent sovereign powers of the state.

I recognize that the state, under our present constitutional provision, has the right to "damage" private property, even though no portion of the property is "taken," but this right of the state remains restricted to damage caused by the state "for public use". *State ex rel. Teter v. State Road Commission*, 152 W.Va. 805, 166 S.E.2d 757; *Javins v. City of Dunbar*, 110 W.Va. 271, 157 S.E. 586.

I readily recognize that if, in order to facilitate the proper construction by the state of a public highway, it is necessary to change the natural flow of surface water in such a manner that it is cast in a body upon the property of a landowner, as in the *Teter* case, with the result that the land is damaged, though not taken, the damage thereby inflicted is "for public use". Public purposes are thereby subserved and the landowner has a right, in an eminent domain proceeding, to have the amount of his damages ascertained so he may be compensated from public funds.

I recognize that if in the proper construction by the state of a public highway, surface water is necessarily gathered in side ditches and thereafter cast in a body from a culvert onto privately-owned lands, with a consequent damage to such lands, such damage is necessarily, designedly and properly

caused "for public use". Public purposes are thereby furthered and subserved and the owner of the damaged land is entitled to have the amount of his damage ascertained in an eminent domain proceeding and to receive "just compensation" therefor from public funds. See *State ex rel. Queen v. Sawyers,* 148 W.Va. 130, 133 S.E.2d 257.

No "public use", or public purpose whatsoever, was subserved by the unintentional drainage of the abandoned mine in this case. Certainly no "public use" and no public purpose or benefit accrued or was subserved by the unfortunate flooding of the Town of Montgomery with the unfortunate, distressing result that properties of so many citizens were severely damaged without a showing of any fault whatsoever on the part of the property owners.

A landowner is not entitled to a recovery of damages from the state road commission, to be paid from public funds, merely because his property is damaged unintentionally, fortuitously or negligently as a mere *incident* of the construction of a public highway when no "public use" or public benefit results therefrom.

The state did not purposely or designedly release the water from the abandoned mine in the instant case. There is nothing reflected from the record to disclose any basis for a reasonable anticipation or belief that the great volume of water was there impounded.

The state, through the construction contractor, was not dealing with known surface water or a drainage situation in this case. The concealed impoundment of water obviously was caused by the action of the operator who mined the coal combined with the operation of the forces of nature which permitted the impoundment of water in the abandoned mine as a consequence of natural seepage or percolation. Ultimately it was the operation of the forces of nature, unattended by any human being, which caused the pressure of the impounded water to break through the surrounding subsurface which had been weakened by the previous excavation by the employees of the construction contractor.

Recently, in the third point of the syllabus of *State ex rel. Firestone Tire & Rubber Co. v. Ritchie*, 153 W.Va. 132, 168 S.E.2d 287, this Court stated: "The general rule is that damages resulting from negligence, nuisance and trespass are not recoverable in eminent domain proceedings but are subject to independent actions for damages." The fourth point of the syllabus of the same case quotes the syllabus of *Mahone v. The State Road Commission of West Virginia*, 99 W.Va. 397, 129 S.E. 320, as follows: "The State Road Commission of West Virginia is a direct governmental agency of the State, and as such is not subject to an action for tort." If there is liability upon the state in this case, it must be predicated on negligence or a tort. In that area, as distinguished from eminent domain proceedings to take or to damage private property for public use, the governmental immunity of the state must be recognized and applied. For cases of that character, in my opinion, the State Court of Claims has been created to afford a forum for assertion of claims against the state.

The following statement appears in 27 Am. Jur. 2d, *Eminent Domain*, Section 481, page 419: "Circumvention of immunity from tort liability for negligence of governmental bodies, under the theory that by negligence of public officers or agents private property was 'taken' or 'damaged,' so that compensation must be paid under eminent domain provisions of the appropriate constitution, has been repeatedly refused where the activities negligently engaged in or carried on were the mere performance of some public function or duty unrelated to a deliberate taking or necessary damaging of private property, and constituted mere tortious acts, not the necessary consequence or result of some public undertaking or project." See also *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co.*, 75 W.Va. 423, 439-40, 83 S.E. 1031, 1037; *Watts v. Norfolk & W. R. Co.*, 39 W.Va. 196, 19 S.E. 521.

The majority opinion avoids reference to negligence in the syllabus. This pivotal, novel and highly significant portion of the Court's decision is almost hidden in a long paragraph in the body of the opinion where the following language appears: "* * * however, we are of the view that if 'private

property' is 'damaged' by the negligence of the State in the construction of a public highway, such negligence is not a bar to recovery by the injured party in eminent domain and no such strict application should be given to the above-quoted language from Article III, Section 9, of the Constitution of this State. * * *." This language troubles me for the following reasons: (a) It seems to imply that the constitutional provision is a grant of power in eminent domain; (b) it holds that recovery may be had in eminent domain for damages caused to private property by simple negligence on part of representatives of the state; (c) it seems to imply that recovery may be had in eminent domain if the damage caused is a mere unintentional incident, as distinguished from a proper or essential requirement of the highway construction; and (d) it implies that it is not essential to recovery of damages against the state in eminent domain that the land be damaged "for public use" and to facilitate the public purpose of public highway construction.

I believe that the Court's decision in this case invites a deluge of mandamus proceedings to require institution of eminent domain proceedings for recovery of damages from the state and its subdivisions for damages caused to private property as a consequence of mere negligence, without regard to the question whether such damages are caused "for public use" and for public benefit. If a bulldozer or a power shovel owned and used by the state or a construction contractor, in connection with construction, maintenance or repair of a state highway, overturns and demolishes a privately-owned dwelling, it seems to me that the present case furnishes a precedent for recovery of damages by eminent domain. A similar situation would arise if, in connection with the construction, maintenance or repair of a state highway, employees of the state or a construction contractor, in the use of machinery or otherwise, negligently causes a nearby dwelling to be destroyed by fire.

We have held that a contractor engaged in construction of a public highway under a contract with the state is absolutely liable for damages proximately caused to nearby private property by the necessary use of explosives in connection with

the highway construction project. Implicit in these decisions, I believe, is the proposition that, though the state caused the explosives to be used for public purposes, there could be no recovery against the state in such cases because of governmental immunity. *Perdue v. S. J. Groves and Sons Company,* 152 W.Va. 222, 161 S.E.2d 250; *Whitney v. Ralph Myers Contracting Corporation,* 146 W.Va. 130, 118 S.E.2d 622. See also *Konchesky v. S. J. Groves & Sons Co.,* 148 W.Va. 411, 135 S.E. 2d 299. Has the state, as a consequence of the present case, lost the benefit of its governmental immunity in such cases, particularly in case of negligent or excessive use of explosives at its instance and under its directions? May recovery now be had against the state by eminent domain where it appears that, in connection with the construction, maintenance or repair of a state highway, explosives are used excessively, unnecessarily or negligently and private property is thereby damaged?

In 2 A.L.R.2d 677, there appears an annotation of the subject of taking or damaging private property by eminent domain for public purposes. Numerous court decisions which, in my opinion, sustain the position I have undertaken to express in this dissenting opinion are listed under Section 5, beginning on page 694 and Section 6, beginning on page 699. Reference is here made to the court decisions there listed.