DUCKER, JUDGE:
*These cases are claims for damages to personal property occasioned by flooding when water which was impounded in an old coal mine broke loose and flowed into the business district of Montgomery, West Virginia, on October 11, 1967, and these cases have by agreement of counsel been consolidated for hearing on the legal question of liability.
All of the pertinent and relevant facts are stipulated by the claimants and respondent and they are the same as those contained *2 in the opinion of the Supreme Court of Appeals case of State ex. rel. Firestone Tire & Rubber Co. v. William S. Ritchie, Jr., State Road Commissioner of West Virginia (W. Va.), 168 S.E. (2d) 287, and further incorporated by reference in State ex. rel., Phoenix Insurance Co. v. William S. Ritchie, Jr., State Road Commissioner, etc., (W. Va.), 175 S.E. (2d) 428, and for the convenience of the parties hereto, in more easily understanding the facts upon which our decision is based, these stipulations are inserted totally and ver-batum herein as follows:
On December 28, 1966 the State Road Commission of West Virginia entered into a written agreement with the Mountain State Construction Company, an independent contractor of South Charleston, West Virginia, to do certain highway construction described as “Montgomery-Morris Creek relocation” which involved the relocation of a portion of West Virginia Highway No. 61 and the construction of a ramp extending from relocated highway 61 to the new highway bridge over the C & O Railroad in the City of Montgomery. The ramp was located on or near the foot of a hillside and was part of a tract of land containing about 97.2 acres owned by Woodrow Wilson Jacobs over which portion surface easements or rights of way were being acquired by the State Road Commission in an eminent domain proceeding pending at that time in the Circuit Court of Fayette County. Construction of the ramp required some excavation near the foot of the hillside and some sloping and benching on the hillside. The contractor had completed the work of sloping and benching the hillside and the sub-grade of the ramp when it appeared that wet conditions or seepage of water could cause the base of the ramp to become unstable.
Before the construction of this project was started extensive soil investigations of the hillside and ramp approach area were conducted by the State Road Commission and many core drillings were made. The investigation and core drillings did not indicate any impoundment of water in the hillside in that area and the respondent and no person in connection with this construction had any knowledge indicating that there was any large volume of water located in the abandoned mine entry where some of the core drillings were made.
Several weeks before October 11, 1967 when the claimants’ *3 property was damaged by the large flow of water, the contractor, at the request of the State Road Commission, dug a “test hole” in the area indicated on State Road Commission map as the most northerly “old mine caved in.” The purpose of the test hole was to determine where the water was coming from that was seeping into the ramp area. Old mine timbers were found in the bottom of the test hole. Water was found also in the test hole but there were no signs of any pressure and no unusual increase in the amount of water was observed after it was first veiwed and apparently accumulated from seepage through the soil. The hole eventually filled with water but this may have been caused by heavy rains during that period.
It was decided by engineers that the seepage found in the test hole caused the instability of the ramp sub-grade and that at least a 12 inch underdrain should be installed from the test hole area to a drop inlet marked D-5 and located some distance left or north of ramp centerline station 7+75 to carry off the seepage of water and permit stability of the ramp base. A ditch in which to place underdrain pipe was started from the drop inlet to proceed south and across the ramp a total of about 120 feet to reach the test hole. This ditch in the process of construction encountered an old mine entry and timbers near the left edge of the ramp.
All of the work in connection with the excavation or ditching and the test hole was extra work not specifically referred to in the original contract but was taken care of under general terms of the agreement or contract by an “extra work order.” The ditch or excavation had proceeded 75 feet to the ramp and across it 35 feet more toward the hillside before the contractor’s employees quit work for the day on October 11, 1967. Approximately two and one-half hours later large volumes of water broke loose at some point inside the mountain, came out through one or more of the mine entries and along the ditch and overflowed certain areas of the City of Montgomery, including claimants’ property. Claimants’ property does not abut or adjoin the Jacobs’ property or the State Road Commission’s right of way but is located several hundred feet distant from said right of way with two or more city streets and the C & O Railroad lying between the mine entry and claimants’ property. *4 No property was taken from the claimants or claimants’ lessors for the right of way or easement in the building of the ramp or relocation of Route 61.
Neither the respondent nor the contractor had any information or knowledge that would indicate in any way that the abandoned mine entry or hillside contained large volumes of water. The abandoned mine entry had been completely covered prior to the excavation and could not be seen from the surface area. The large volume of water that came out of the mine entry on the night of October 11, 1967 was impounded somewhere inside the mountain beyond the area of the construction. Other mine entries were uncovered during the construction in connection with the relocation and building of the ramp without any problems with regard to the flow of water whatsoever. After this extraordinary flow started, several hours of effort were required to stem it by pushing dirt into the hole.
The respondent did not attempt to condemn the mine or minerals in connection with this construction nor did it receive any benefit from the mine or minerals underlying the mine in question. The title to the tract of land wherein the mine was located was owned by Jacobs and only a right of way or easement was obtained from him by the respondent. A right of entry on the land owned by Jacobs had been obtained in an eminent domain proceeding instituted by the respondent and the excavation of the ditch in question was being done by the contractor on the right of way of the respondent.
With all such facts agreed upon, our present consideration is to pass upon the respondent’s written motion to dismiss the claims, the points of which motion are as follows:
1. Claimants have failed to show that respondent should in equity or good conscience pay or discharge said claims.
2. The statutory jurisdiction of the Court of Claims is limited to claims against the State of West Virginia and its agencies but does not extend to or embrace claims against State officials such as respondent, William S. Ritchie, Jr.
3. William S. Ritchie, Jr., as State Road Commissioner of West Virginia, named as respondent in the first group of the *5 above-styled claims, is not the State of West Virginia, nor is he an agency of said State as defined in Section 3, Article 2, Chapter 14, of the. Official Code of West Virginia, 1931, as amended, and is not, therefore, subject to the jurisdiction of this Court.
4. The agreed statement of facts clearly shows that the State and its independent contractor, Mountain State Construction Company, were lawfully engaged in a public improvement and that neither was guilty of any unlawful or wrongful acts.
5. The evidence does not show any acts or omissions on the part of the State Road Commissioner, the State Road Commission, the contractor, or their agents or employees that would constitute actionable negligence or ground for a civil action against the respondent.
6. The evidence does not show any act or omission on the part of respondent, or their agents or employees, which a person of ordinary prudence could reasonably foresee might naturally or probably produce an injury or damages such as mentioned in the claims filed in this proceeding.
7. The evidence does not show any act or omission on the part of the respondent, their predecessors, or their agents or employees, contemplated under Code, 14-2-13, as amended.
8. The provision in Section 9, Article III, of the West Virginia Constitution, that private property shall not be taken or damaged for public use without just compensation, does not render the State Road Commission or the State Road Commissioner liable for damages to property from unknown subsurface bodies of water impounded inside a mountain in an abandoned mine entry unless such sub-surface bodies of water are ascertainable or discoverable from surface indications or other means without sub-surface excavations for that purpose.
9. The respondent is not liable to third persons for damages resulting from negligent acts or omissions of an independent contractor, its servants, agents or employees occurring while performing highway construction work, lawful in itself and not intrinsically dangerous, according to plans and specifications of the State Road Commission.
*6 10. Neither the State Road Commissioner nor the State Road Commission of West Virginia is an insurer against unforeseeable accidents occurring in the area of highway construction.
11. There is no procedure prescribed by general law for compensation for personal property damaged for public use referred to in Section 9, Article III, of the West Virginia Constitution.
12. The evidence clearly shows that the damages complained of in the above-styled claims resulted from an intervening cause not connected in anywise with respondent or the contractor but resulted from the wrongful acts or omissions of the coal mine operator or the owner of the land who caused or permitted the dangerous impoundment of large volumes of water inside said mountain and failed to warn respondent or the contractor of said dangerous impoundment.
Point 1 of the motion is decided by our conclusion as to the other points, except that points 2 and 3 are not, in our opinion, of sufficient merit to be allowed as technical objections to the claims, as it is apparent that the State Road Commission is the real respondent, and not William S. Ritchie, Jr., personally, and further the amendment by claimants of their claims sufficiently eliminates this technicality.
As to points 4 and 5 of the motion, this Court is of the opinion that neither the State nor its independent contractor, Mountain State Construction Company, was guilty of any act which standing alone would be considered unlawful or wrongful, or of any act of negligence but nevertheless, their acts amounted to a trespass which resulted in damage to the claimants and rendered the case actionable.
The questions raised in points 6 and 7 are based upon facts which are true but which are, in our opinion, improper conclusions as to the law.
As to point 8 of the motion, the Supreme Court of Appeals, in the two cases first herein referred to has answered this question when it awarded a writ of mandamus to compel the State Road Commission to institute condemnation proceedings against the owners of the land damaged by the flooding waters from the abandoned mine.
*7 Points 9 and 10 of the motion are wholly inapplicable to the cases in hand.
Point 11 of the motion asserts that there is no statutory law in West Virginia for compensation for personal property damaged for public use referred to in Section 9, Article III of the West Virginia Constitution, which statement is correct, but that does not determine the law applicable in this case. The Supreme Court cases herein-before cited granted writs of mandamus to enforce the initiation of condemnation suits to determine compensation for land taken for public use but refused to make the same applicable to personal property because the Constitution was not “self executing,” as there was no statute of the State prescribing the procedure for such purpose. Those cases cited, and the Firestone Rubber Company quoted, with approval, the doctrine as stated in Johnson v. City of Parkersburg, 16 W. Va. 402, to the effect that the Constitution “forbids damage to private property and if no remedy is provided by the Constitution or by statute, the common law which gives a remedy for every wrong will furnish the appropriate action.” In Mason v. Harper’s Ferry Bridge Co., 17 W. Va. 396, 106 S.E. 644, the Court held that an injunction was permissible to enforce the payment of damages suffered by reason of the lessening in value of a ferry franchise. From these decisions, it seems that the questions turned upon the nature of the relief sought, namely, a mandamus to compel the parties to resort to the remedy of eminent domain proceedings provided by statute as to land, but not as to damage to personal property because there was no such statutory procedure. These decisions do not overrule the earlier decisions to the effect that the common law in its usual procedure provides for actions of trespass and treaspass on the case. Of course, an action of trespass against the State cannot be maintained by the claimants herein in any other courts of the State because of the State’s constitutional immunity, but such defense of constitutional immunity is not available in this Court. It would seem to appear that the Supreme Court has practically said in the majority and dissenting opinions in the cases first cited herein that this Court is the proper place of jurisdiction in these cases. These claims are clearly in tort, ex delicto, and as such are within our jurisdiction. Accordingly, point 11 of the motion is not well taken.
Point 12 of the motion to the effect that the damages resulted from the wrongful acts or omissions of the coal mine operator or the *8 owner of land who caused or permitted the dangerous impoundment of large volumes of water inside the mountain and failed to warn respondent or the contractor thereof could possibly under some circumstances be well taken except for the fact that here there was no damage occasioned by the impoundment, which was not in itself unlawful; the direct and proximate cause of the damages here was the acts which caused the release of the water.
The real answer to all the points raised by the motion is that respondent’s acts amounted to a trespass causing the damages alleged by the claimants, and although there was no negligence on the part of the respondent and the consequences were not reasonably foreseeable, the damages were done as a consequence of the work done by the respondent, and this case is not one of damnum absque injuria, but is one that is compensable as being the result of an act done by the respondent and as being one which was the proximate cause of the resulting damage.
In accordance with the foregoing, we are of the opinion to, and do hereby overrule in its entirety the motion of the respondent, and order the above designated claims for separate hearings upon the facts and merits of each case.
Motion to dismiss overruled.

 This opinion was inadvertently omitted from Volume 9 of the Court of Claims Reports.